IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 06-00080 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT ETHAN |
| | ) | MOTTA'S MOTION TO DISMISS |
| vs. | ) | SECOND SUPERSEDING INDICTMENT |
| | ) | AND/OR ORDER A NEW TRIAL |
| ETHAN MOTTA (05), | ) | (DOCKET NO. 1183); ORDER |
| | ) | DENYING DEFENDANT ETHAN |
| Defendant. | ) | MOTTA'S MOTION FOR JUDGMENT |
| | ) | OF ACQUITTAL (DOCKET NO. |
| | ) | 1193) |
| _____ | ) | |

ORDER DENYING DEFENDANT ETHAN MOTTA'S MOTION TO DISMISS SECOND
SUPERSEDING INDICTMENT AND/OR ORDER A NEW TRIAL
(DOCKET NO. 1183); ORDER DENYING DEFENDANT
ETHAN MOTTA'S MOTION FOR JUDGMENT OF ACQUITTAL (DOCKET NO. 1193)

I.  DEFENDANT ETHAN MOTTA'S MOTION TO DISMISS SECOND
    SUPERSEDING INDICTMENT IS DENIED.

On March 20, 2009, a jury convicted Defendant Ethan Motta of Counts 1 (substantive RICO), 2 (RICO conspiracy), 3 (illegal gambling business), 6 (violent crime in aid of racketeering--murder), 7 (violent crime in aid of racketeering--murder), and 8 (violent crime in aid of racketeering--attempted murder) of the Second Superseding Indictment.

On October 5, 2009, Motta filed a Motion to Dismiss the Second Superseding Indictment and/or Order a New Trial. Motta argues that, with respect to Counts 6, 7, and 8, the Second Superseding Indictment did not properly allege the mens rea.

With respect to all counts, Motta argues that the Second Superseding Indictment is deficient because it fails to allege specific conduct regarding interstate commerce and because insufficient evidence of interstate commerce was introduced at trial.  With respect to Count 3, Motta argues that the Second Superseding Indictment and jury instructions were deficient because they did not allege or require a jury to determine that five people were involved in the gambling business for thirty days or more.  Finally, Motta argues that trial counsel was ineffective for failing to file motions asserting these arguments.  Because none of the arguments is persuasive, Motta's motion is denied.[1]

> A.   Counts 6, 7, and 8 of the Second Superseding Indictment Sufficiently Allege the Elements of VICAR offenses.

Motta initially argues that Counts 6, 7, and 8 of the Second Superseding Indictment were not properly alleged.  Those counts charged Motta with murder and attempted murder in violation of 18 U.S.C. § 1959, the federal statute on violent crimes in aid of racketeering activity ("VICAR").  Motta contends that those VICAR murder and VICAR attempted murder counts should

---

[1] The court denies these motions without a hearing pursuant to Local Rule 7.2(d), which is applicable to motions in criminal cases.  See Crim.LR12.3 ("The local rules pertaining to civil motions are applicable to motions in criminal cases . . . .").

have alleged the mens rea for the underlying state murder and attempted murder crimes. This court disagrees.

The federal statute on violent crimes in aid of racketeering activity provides:

> Whoever, [1] as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or [2] for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished[.]

18 U.S.C. § 1959(a). "The statute clearly contemplates two alternative theories of motive for the commission of VICAR offenses: either the defendant received something of pecuniary value from the racketeering enterprise to commit the crime ["quid pro quo crime"] . . .; or the crime was committed to achieve, maintain or increase the defendant's status in the enterprise ["status crime"] . . . ." United States v. Fernandez, 388 F.3d 1199, 1232 (9th Cir. 2004). Motta was prosecuted under the latter "status crime" theory.

The Ninth Circuit has stated that "an indictment setting forth the elements of the offense is generally sufficient." Id. at 1219. The Ninth Circuit has explained that

3

the elements of a VICAR violation under the "status crime" theory are: "'(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendant[] committed a violent crime; and (4) that [the defendant] acted for the purpose of promoting [his] position in the racketeering enterprise.'" United States v. Banks, 514 F.3d 959, 965 (9th Cir. 2008) (quoting United States v. Bracy, 67 F.3d 1421, 1429 (9th Cir. 1995)); accord Fernandez, 388 F.3d at 1220)).  Fernandez also explained that a nexus to interstate commerce is also an element of a VICAR violation.  Fernandez, 388 F.3d at 1220 n.10.

Motta is not claiming that the jury was improperly instructed about the mens rea necessary to support a state-law murder and/or attempted murder charge.  See Jury Instructions at 64-66 (March 11, 2009).  Instead, Motta argues only that the Second Superseding Indictment was deficient because it did not allege the mens rea requirement of the underlying state-law violent crime.  This court is not persuaded. With respect to Counts 6, 7, and 8, the Second Superseding Indictment sufficiently alleges all of the elements, including the violent crimes alleged to have been committed--violations of sections 707-701.5 and 705-500 of the Hawaii Revised Statutes.  In so ruling, this court is persuaded by the Ninth Circuit's holding in Fernandez.  Fernandez held that an indictment charging a VICAR

4

violation was sufficient when it alleged the elements of a VICAR violation.  388 F.3d at 1220.  Nothing in <u>Fernandez</u> or any other authority requires an indictment charging a VICAR violation to allege the elements of the underlying violent crime.  The Second Superseding Indictment sufficiently charges Motta with having committed murder and attempted murder "for the purpose of gaining entrance to and maintaining and increasing [his] position[] in the enterprise, an enterprise engaged in racketeering activity."  Second Superseding Indictment, Count 6, ¶ 2; Count 7, ¶ 2; Count 8, ¶ 2.

The court notes that, in connection with the death penalty charges against Motta, the Grand Jury charged that Motta "intentionally inflicted serious bodily injury that resulted in the death of another person"; "intentionally participated in an act, contemplating that the life of a person would be taken, other than one of the participants in the offense, and another person died as a direct result of the act"; "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offence, such that participation in the act constituted a reckless disregard for human life and another person died as a direct result of the act"; and "intentionally killed or attempted to kill more than one person in a single criminal episode."  Second Superseding Indictment at 14.

Although these "special findings" were not alleged as part of Courts 6, 7, or 8, they indicate that the Grand Jury was presented with facts supporting the state-law murder and attempted murder charges.

Motta cites no binding authority indicating that a sufficient indictment concerning a VICAR violation must set forth all the elements of the underlying violent crime.  At best, Motta says that, under the December 2006 Manual for Federal Prosecutors concerning Violent Crimes in Aid of Racketeering, the Department of Justice has told federal prosecutors that indictments should allege the elements of a generic violent crime.  The manual may be an aid for federal prosecutors, but nothing before this court indicates that it establishes rights held by Motta or obligations owed by the Government.

> B.  The Second Superseding Indictment Sufficiently Alleges an Interstate Commerce Nexus, and the Evidence Introduced at Trial Sufficiently Established that Nexus.

Motta next argues that the Second Superseding Indictment is insufficient because it does not allege facts demonstrating an effect on interstate and/or foreign commerce. This court disagrees.

In Fernandez, also a RICO case, the Ninth Circuit rejected the same argument, holding that "an indictment need not set forth facts alleging how interstate commerce was affected, nor otherwise state any theory of interstate impact."  388 F.3d

at 1218.  The indictment in that case merely alleged that the "Mexican Mafia was an enterprise, 'which is engaged in, and whose activities affect, interstate and foreign commerce.'"  Id.  at 1217.  Each count here similarly charged Motta with being a member of an enterprise that was engaged in, and whose activities affected, interstate and foreign commerce.  The Second Superseding Indictment therefore properly alleged an interstate and/or foreign commerce nexus.

To the extent that Motta argues that there was no evidence that his gambling enterprise affected interstate commerce, he is simply incorrect.  The evidence did not pertain to a purely local gambling operation.  Evidence was introduced at trial indicating that gambling paraphernalia was purchased from out of state and transported to Hawaii.  This de minimis effect on interstate commerce is sufficient to support Motta's convictions.  See Fernandez, 388 F.3d at 1249-50 (holding that RICO jurisdiction is supported when the facts establish a de minimis effect on interstate commerce).

        C.    Motta Was Properly Convicted on Count 3 of the Second Superseding Indictment.

In a somewhat disjointed argument, Motta challenges his conviction on Count 3 of the Second Superseding Indictment, claiming that, under United States v. Gilley, 836 F.2d 1206 (9th Cir. 1988), the indictment should have alleged and the jury should have been instructed that Motta could only be convicted on

7

Count 3 if the jury agreed that the illegal gambling business had been in continuous operation by five or more persons for more than thirty days.  However, Gilley is inapplicable.

Gilley only involved a challenge to the sufficiency of jury instructions for an illegal gambling charge, not a claim that the indictment itself was insufficient.  The Second Superseding Indictment charged an illegal gambling business that was operated from 1999 to June 2004 and alleged that it "involved card games and electronic video gambling machines, in violation of Hawaii Revised Statutes Section 712-1221; and which gambling business remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 on any single day."  Second Superseding Indictment, Count 3.  These allegations sufficiently allege the elements of a violation of 18 U.S.C. § 1955.

In Gilley, the Ninth Circuit held that, when there is a possibility that an illegal gambling business involves five or more individuals over multiple thirty-day periods, the jury must be instructed that they must unanimously agree on the particular period of thirty days or more during which five or more persons were continuously involved in the business.  Motta has not shown that Gilley is applicable here.  Motta points to no evidence establishing that the illegal gambling business operated over separate periods involving thirty or more days.  To the contrary,

the evidence introduced at trial established a single gambling business involving more than five individuals that was in substantially continuous operation for more than thirty days. The evidence also established that the business had "a gross revenue of $2,000 in any single day," an alternative basis for the conviction under § 1955.  The jury was instructed that, "In order to return a verdict, it is necessary that each juror agree thereto.  In other words, your verdict must be unanimous."  Jury Instructions at 74.  Under these circumstances, Motta shows no error.

To the extent Motta argues that the court erred in instructing the jury that the business had to be in "substantially continuous operation" rather than in "continuous operation," Motta is wrong.  The language of § 1955 requires "substantially continuous operation."  The Ninth Circuit Model Jury Instruction 8.119 also recognizes that the business need only be in "substantially continuous operation."  This court instructed the jury to determine whether "the business had been in substantially continuous operation by five or more persons for more than thirty days or had a gross revenue of $2,000 in any single day."  See Jury Instructions at 52.  There was no jury instruction error.

Motta's final argument as to Count 3 is unpersuasive. Motta argues that the jury might have convicted him because it

9

found that he had violated only section 712-1221 of the Hawaii Revised Statutes, not 18 U.S.C. § 1955.  However, the jury is presumed to follow the instructions given it.  See <u>Townsend v. Knowles</u>, 562 F.3d 1200, 1209 (9th Cir.2009) ("The law presumes that the jury follows the instructions given.").  Here, the jury was instructed on the elements of the offense charged in Count 3 and was told that, "In order for you to convict a defendant on that count, the government must prove all of the following elements beyond a reasonable doubt."  Jury Instructions at 52. It is true that one of the elements of the offense that the jury was instructed on was a violation of section 712-1221.  However, the jury was instructed that, to convict Motta on Count 3, it not only had to find a violation of section 712-1221, but also had to find that the Government had proved the other elements of Count 3 as well.

        D.   <u>Motta's Trial Counsel Was Not Ineffective.</u>

Motta claims that his trial counsel was ineffective in failing to previously assert the argument discussed above.  This court disagrees.

To establish ineffective assistance of counsel, Motta must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  There is "a strong presumption" that counsel's conduct was reasonable and that

counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." <u>Id.</u> at 688.  Even if Motta can overcome the presumption of effectiveness, he must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential.  <u>Id.</u> at 689.

Motta fails to demonstrate that his trial counsel's performance was deficient because trial counsel did not raise the unmeritorious arguments asserted in this motion.  Because trial counsel's performance was not deficient, that performance could not have prejudiced Motta.  Motta therefore fails to establish ineffective assistance of counsel.

II.      <u>MOTTA'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL IS DENIED.</u>

On October 15, 2009, nearly seven months after a jury convicted him, Motta filed a Motion for Judgment of Acquittal (Docket No. 1193).  That motion is denied.

Motions for judgment of acquittal are governed by Rule 29 of the Federal Rules of Criminal Procedure.  Rule 29(c)(1) requires the motion to be brought "within 7 days after a guilty verdict or after the court discharges the jury, whichever is later."  Motta waited nearly seven months after the verdict and

the discharge of the jury to file his motion. The motion for acquittal is therefore denied as untimely.

Even if the court considered the merits of the motion, the court would deny it. The motion is unclear, disjointed, and based, in part, on the declaration of Motta's current counsel, rather than on facts presented at trial. Motta appears to be arguing that the two racketeering acts upon which his convictions were based (illegal gambling business and extortion conspiracy) are insufficient to demonstrate a pattern of racketeering activity. He is wrong.

This court instructed the jury on what was necessary for it to determine that Motta had committed a pattern of racketeering activity. See Jury Instructions at 24, 32-41. Specifically, the jury was instructed that,

> To establish a "pattern of racketeering activity," as alleged in Count One of the Indictment, the government must prove three elements beyond a reasonable doubt:
>
> First, a defendant intentionally committed, or caused, or aided and abetted the commission of, two or more of the racketeering acts alleged in the Indictment. These two or more racketeering acts must have been committed within ten years of each other. Your verdict must be unanimous as to which specific racketeering acts you find that the defendant committed, caused, or aided and abetted. Shortly, I will instruct you on the elements regarding each of the charged racketeering acts.
>
> Second, the racketeering acts are "related"; that is, have the same or similar

>     purposes, results, participants, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events.  Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise.  The government must also prove that there is some meaningful connection between a defendant's illegal acts and the affairs of the enterprise.  To satisfy this part of the element, the government must establish either (1) that the defendant's position in the enterprise facilitated his commission of those illegal acts and that the racketeering acts had some impact or effect on the enterprise, or (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the defendant was able to commit the acts by virtue of his position or involvement in the affairs of the enterprise.
>
>     Third, the racketeering acts themselves either extended over a substantial period of time or they posed a threat of continued criminal activity.
>
>     Moreover, in determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendants; rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

Jury Instructions at 32-34.

In convicting Motta, the jury necessarily determined that Motta had participated in a pattern of racketeering activity based on the predicate acts of an illegal gambling business and

13

an extortion conspiracy.  The evidence introduced at trial was sufficient to establish a pattern of racketeering activity.  Motta's disagreement with the jury on whether the two predicate acts upon which his convictions are based are sufficient to demonstrate a pattern of racketeering activity is not justification for his acquittal.  Nor does Motta's counsel's declaration about evidence introduced in a different case cast doubt on the jury's determination based on facts introduced at Motta's trial that Motta had participated in a pattern of racketeering activity.

Motta's final throwaway argument is made in a single sentence at the end of his memorandum.  Motta says, "The Indictment fails to properly allege, and the evidence is insufficient to meet, the Reves 'operation and management test.'"  The Second Superseding Indictment alleges, "The defendants participated in the operation and management of the enterprise."  Second Superseding Indictment, Count 1, ¶ 4.  The jury was instructed that "the government must prove that each defendant participated in the operation or management of the enterprise itself or that he had some part in directing the enterprise's affairs."  Jury Instructions at 31.  The evidence introduced at trial was sufficient to support the jury's determination that Motta participated in the operation or management of the enterprise.

III.     CONCLUSION.

For the foregoing reasons, the court denies Motta's Motion to Dismiss Second Superseding Indictment And/or Order a New Trial (Docket No. 1183) and Motta's Motion for Judgment of Acquittal (Docket No. 1193).  These motions are denied without a hearing.  The hearing on these motions is taken off the calendar.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 28, 2009.



　　　　　　　/s/ Susan Oki Mollway
　　　　　　　Susan Oki Mollway
　　　　　　　Chief United States District Judge

United States of America v. Rodney Joseph, Crim. No. 06-00080-02; Order Denying Defendant Ethan Motta's Motion to Dismiss Second Superseding Indictment And/or Order a New Trial (Docket No. 1183); Order Denying Defendant Ethan Motta's Motion for Judgment of Acquittal (Docket No. 1193)